The next case is Araujo v. Framboise or Framboise Holdings, 23-11-42. Mr. Sharma. Good morning, Your Honor. You may be ready. Good morning, Your Honors. May it please the Court, this is a fairly straightforward question on a trademark case. It fundamentally boils down to two trademarks at issue. The main issue in this case was priority and a likelihood of confusion as to whether the two marks at issue were confusingly similar. Ultimately, before the TTIP, this case ended up boiling down to a question of priority. The issue is on appeal here. How do you pronounce the trademark? I'm sorry? How do you pronounce the trademark? I would pronounce it as Todecacho. I believe it's Brazilian or Portuguese, probably. Seems to be the only way to pronounce it. Yeah, that's how I would pronounce it, Your Honor. The issues on the appeal, though, are pretty straightforward, and all of it seems to stem from the weight of the testimony that was introduced by the appellee, the opposer. You seem to be arguing an error in the Board's letting in some late evidence. Correct. Four days late? Right. That is one of the sub-issues. The main issue that we feel is important for the appeal is really the weight that that testimony was given. That it was late, we feel, is still relevant, but less so, necessarily, than the weight that it was given. What standard of review do we apply to that question? It's a mixed question, ultimately, Your Honor. The standard of review for whether the extension should be granted is generally in the— I meant the primary question you were talking about, which is the weight of the testimony should be provided. The weight of the testimony would be substantial evidence, would be the standard of review here. That's a difficult hurdle for you to overcome. Right. It's a less differential standard than the abuse of discretion, of course. The ultimate legal conclusion of priority is generally one that's resolved de novo on appeal. So I would say that the overall question of fact and law is one that's mixed. But you're not arguing that a corroboration standard applies to the testimony of Mr., I think, Extract, right? No. Okay. So— Well, if a corroboration requirement is not present, why is the declaration of Mr. Extract not sufficient in and of itself? The Board and the Federal Circuit's precedent is fairly clear on this, that the testimony of a single witness can be clear and convincing enough, but it needs to be more than a mere scintilla of proof as kind of— Why isn't the testimony alone of somebody who has personal knowledge and personal experience then more than a scintilla? So in this case, ultimately, what's presented in the testimony is very threadbare. So in his testimony, Mr. Extract basically states or restates that which is in the original opposition and basically repeats the original date of first use, which I believe is March 24th, 2017. Now, during trial before the TTAG, the Board seemed to agree with us that a lot of the— So there were two pieces of testimony that were turned in and then two sets of documents under notice of reliance that were introduced. So the appellee, in reviewing the documents that were introduced under notice of reliance, tried to show that these documents that were introduced could show that it was prior use as far back as this. Now, the TTAG seemed to take our position at trial that they could only be introduced for what they show on their face, not to the truth of the matter asserted therein. So in essence, the testimony of Mr. Extract, not the documents under notice of reliance, not even the rebuttal testimony, it's the initial testimony that was late originally, is essentially the sole reason why priority— Was Mr. Extract—was he deposed on this issue? No. It was just done via a testimonial affidavit introduced. Was there an opportunity—I don't know that much about the discovery in these kinds of proceedings. I did see maybe reference to a first trial period, a second trial period. Is there opportunity for depositions at that time? So this—so the way that the TTAG will do its procedure is they have a normal discovery period, and you can do depositions during that time. The only discovery that took place during the TTAG at that time was written discovery. Was that the choice of the parties? No. It just ended up—that's just how it ended up happening. Are you suggesting that you didn't have an opportunity to take a deposition? No, Your Honor, we are not. Okay, so it wasn't the choice of the parties to—it was the choice of the parties to not take depositions. Correct. Okay. That's fair. So during the initial discovery period, there was just written discovery, admissions, interrogatories, and request for production of documents. Then during the trial period, that's when you're able to introduce testimonial affidavits or documents. And does it work? Go ahead. Were the declarations of Mr. Extract submitted during the term of discovery, prior to the end of discovery? No, not during discovery, Your Honor. It came in during the trial period. Well, that was the notice of reliance. Correct, yeah. In the TTAG, that will come during the trial period. So you did not see the declaration until that notice of reliance? Correct, so they would have been submitted around the same time. That declaration is the one that came, I believe, four days late after the end of the trial period. I believe you also had a question, Your Honor. I was just going to ask if there would be an opportunity to depose Mr. Extract after that submission of his second declaration? Of his second declaration? No. So during the trial period, the opposer, which would be the appellee here, they can introduce their trial testimony. During our trial period, we introduced our own rebuttal testimony, the testimony of Mr. Araujo, and then they get their rebuttal, which they also introduce the rebuttal testimony of Mr. Extract. The defendant, which would be us as applicants in the TTAG, doesn't get another opportunity to be able to introduce or to rebut that testimony after those periods. But you did have a trial period where you could have? Correct. Okay. In other words, what I'm trying to say, just to make sure I'm being clear, I understand that I guess the opposer had the opportunity to first have his trial period, then you had a trial period, and then they had the rebuttal trial period. Correct. Do I understand correctly that the second declaration of Mr. Extract was introduced at the end of the first trial period? Not quite. Okay. So the initial 30-day trial period, that's when they introduced their documents. That's the notes of reliance documents, the two sets of documents, and the testimony of Mr. Extract. They get their 30 days. The testimony was the one that was late initially. Then we get our 30 days, and then I believe after that they get a 15-day rebuttal period. So that rebuttal testimony came after all of this. So to pick up on the line of questioning of Judge Stahl, so during your 30-day trial period, you did have the opportunity to take Mr. Extract's deposition, correct? Yes, Your Honor, I believe so. And wouldn't that have been the time and place to question what was said in this declaration as to the dates and whether there were any sales receipts or invoices or any of the documentary things that you argue are missing here? Yes, Your Honor. At the time, it was our strategy that we came up with with the client that we would end up attempting to defend against this by introducing our own documents, what we produced to the opposer during discovery, as well as our testimony. Because that left you with a hard thing to prove a negative. Yeah. And if there's no further questions, I'll reserve the rest of my time. Then we'll sign it for you. Thank you. May it please the Court, I'm Steve Bean, and I represent Fram Boyce Holdings in this matter. I'd like to begin by stating that it's an honor to be here. Thirty-one years ago, when I was a first-year law student at the University of Virginia, Judge Randy Rader came down to Charlottesville and taught a patent class. And I was exposed to the Federal Circuit through that class. I was exposed to patent law through Judge Rader and his commitment to come down every weekend. And at the end of that class, Judge Rader invited me to come up to the court the following summer for what he called an internship. And I came up to the court and spent a summer. I think I was in a storage room, one floor below his office. But there was a desk in there and a computer. And it was a wonderful summer. I even got to meet Judge Rich in the elevator one day. And that was a formative experience. Mr. Bean, you can continue to work from an desk, but you're defending a case. I realize that. It's a limited time. I realize that. It was a formative experience and one that I have been grateful for. In acknowledgment of the Federal Circuit, the Federal Circuit has had a profound effect on the system's intellectual property laws. And our interpretation of those laws. And today, I'm hoping to persuade your honors to not overturn the TTAB's decision, sustaining the opposition of the trademark application wherein the appellant was attempting to register our client's trademark. There's two issues in the case. And I'm not going to rehash those issues. I'm going to hopefully provide some context to those two issues. The first issue is the issue of the propriety, the appropriateness of the extension of time. That was raised in the briefing. And I think that it's important to understand the context of how those extensions of time are used before the trademark trial and the appeal board. The trademark trial and appeal board in the TBMP explains that they are liberal with granting extensions of time. They are liberal with the first request. They are not so liberal with the second request. And getting a third request is akin to getting a handwritten note from God to move the case. But the board is fairly liberal on the first request. And they look at the totality of the circumstances surrounding the request. And in this instance, most good trademark attorneys will try to save their first request in case they really need it. And in this case, it was needed. At the very end of the trial period, there were some difficulties in obtaining a signed declaration from a client, from a witness in a foreign country. And that first request was made. Admittedly, the reasons for the request were thin. But the full reasons did come out through that briefing process. And there was a need for the additional extension of time. It was four days. When you say full reasons, you mean that there was a need for time? That there was a need for time. And admittedly, counsel probably could have and should have written a little bit more thorough explanation of why the request was needed. The records reflect that the request went in at 10 o'clock at night, the day of the deadline. And I've been in those situations. And it's hard to reach counsel at 10 o'clock on the day of a deadline. But the request went in. So we review this for an abuse of discretion, right? It's reviewed under the abuse of discretion standard, whether or not the decision was arbitrary, capricious, and an abuse of discretion. And do I remember correctly that consideration of prejudice was considered? It was considered. Whether this would harm anybody? That was one of the factors that the court considered. The court also considered the fact that this was a first request. And that in two and a half years of the underlying action that this party, our party, had never before requested an extension. And the court determined that the effect was de minimis and that the appellant, in this case, still had their whole 30-day trial period ahead of them in which to test the sufficiency of the declaration that came in. That sounds like a very reasonable reason to me or analysis to me. Do you want to talk about the other issue? Yes. Yes, I'm happy to talk about the other issue. The other issue is the weight that's afforded the evidence and whether or not that decision was correct. Now, it's interesting. I've heard some questions asked about the procedure in TTAB, in the TTAB trial mechanism. And during the discovery period, the parties have opportunity to take depositions. They can propound interrogatories, requests for admission, requests for discovery. They can schedule and notice depositions. And then you can test the sufficiency of whether or not a party has first use of the mark. In this case, for reasons not reflected, it appears to have been strategy by some of the parties not to take depositions. And the risk in that case is that you're going to have a declaration put in front of you that you may not have complete background on. But that's a strategy decision that you make, and it's not a reason to overturn a lower decision. So in this case, the declaration from Mr. Extract was complete. I believe the board called it clear and convincing and compelling, I think was the language there. Well, the declaration is – and let me back up a little. Sure. Is there any other – did you submit or rely on any other evidence to show use prior to the critical date in question? So Framboise attempted to use evidence of some Amazon webpages that showed reviews dating back to 2017, which is two years prior and in line with the testimony of Mr. Extract. The board did not admit those exhibits into evidence for hearsay. They were out-of-court statements offered to prove the truth of the matter asserted. So those exhibits were not considered by the board. But what the board did consider was Mr. Extract's testimony. And his testimony – And that's all? Yes. So his testimony is that – I mean, usually to establish a priority of use, you have evidence to show sale or advertising of the mark on a product in question. That's typical. Here, even the declaration doesn't talk about sale or advertising directly. It says Framboise has used the mark. How? In what connection? So why? Then it says it's consistently promoted the goods. Does that mean advertising? I mean, it's pretty thin. Pretty thin. Now, you've got the benefit of substantial evidence helping you here, but nonetheless, it's about as thin a statement of use that I've seen in a long, long time. Well, not to overly argue or to take an antagonistic approach here, but I don't think it's that thin. And the reason why I don't think it's that thin is because the declaration – in paragraph 4 of the declaration – first of all, paragraph 2 states that it's based upon his personal knowledge. So we have a witness with personal knowledge. But in paragraph 4, he lists dates. He gives a date of March 24, 2017. He discusses continuous use of the mark. He discusses different product types associated with the mark. He also discusses the types of stores. So in that tight little paragraph, you've got dates of first use. You've got the requirement for continuous use, which is nonabandonment of a mark. You have channels of trade, which is the stores that are involved in presenting the goods to the public, and the different types of goods. Could you answer the question about what promoted its goods means? I'm sorry, again? Could you answer the question from Judge Lynn about what promoted its goods means in this declaration? Promoting goods in trademark vernacular means presenting the goods to the public. It means advertising. It means Amazon webpages. It means Amazon reviews. Well, that doesn't say Amazon webpages. It doesn't state that. That's not fair. It doesn't state that. But promoting the mark is presenting the mark out to the public. And if you look at the exhibits accompanying the declaration, there are representative examples of how the mark was promoted. And there's pictures from store shelves. And those pictures show numerous products in different stores, all bearing the mark Totocaccio. So although the declaration, paragraph 4, is tight, it's supported with personal knowledge, and it's also supported with the exhibits that were representative examples discussed in paragraph 4. So what happens here in the substantial evidence standard, it's not that there can only be one outcome. It's that there is sufficient evidence that a reasonable mind could find that the outcome is supported. I noticed that your client filed their own trademark application at some point during this proceeding. Is that right? Yes. And provided the same date as in paragraph 4 for the first date of use. Yes. Is that right? Yes. I understand. I was guessing that that would not be considered corroborative, could not be relied on, because it was actually filed after the date of the suit. Right. So what was happening here was that our client is a large foreign company that had neglected to file its rather well-known mark in the United States. And the mark, pound sign Totocaccio, a very unique mark, was filed by the appellant. And when our client learned of that filing, our client, first of all, opposed it, because they believed and did have common law rights from their substantial and lengthy use of Totocaccio in the United States. But then they filed their own separate trademark registration. So the underlying opposition here is to dispose of appellant's application to our mark, and then we have a subsequent application to shore up those rights and obtain a federal registration. Thank you very much. I have three more minutes. I could reminisce a little more, but I dare not. No one loses points by not using up all their time. All right. Well, with no further questions, that is all. Thank you very much. Thank you, Mr. Green. Mr. Chiarmella. I just wanted to say just a couple more things about the testimony itself. I tend to agree that it's fairly thin, but one thing I also wish to convey, it's not that it can't be afforded any weight, just that it should have been afforded less weight when it was before the TTAB, given how thin it is. I believe in the testimony he places it on his personal knowledge and a reflection of the records that he had. I'm not sure what these records were, if it was just the Amazon documents that were produced under Notice of Reliance that accompanied the testimony, or if it's some other set of documents that were never introduced. The point that I wish to emphasize is that the Do I remember correctly that the standard, the burden, I guess, of persuasion that was placed on them was clear and convincing evidence? Preponderance of the evidence. Since the issue here would be priority, ultimately, it would be preponderance of the evidence. Got it. So it's whether there's substantial evidence that that evidence could be preponderance of the evidence of the assertions made. Correct. And then as to the evidentiary issue, it needs to be clear and convincing and that it has to be able to convince a reasonable mind that based on this evidence, or in this case this testimony, that you could rule in their favor. The only other thing I would wish to add is that in a modern age where the appellee as well as my client deal in digital and online sales, getting copies of documents where you could get invoices and sales, these are all readily available, easy to be produced, and just a simple search of your own business records that are easily accessible on any of your online accounts, such documents could have been produced to corroborate that testimony. Unless the Court has any other questions, I thank you for your time. Thank you, Counsel. Counsel, we thank you based on this edition.